UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:02-cr-00012-JMS-CMM |
| | ) | |
| DARRELL WILLIAMS, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motions for Compassionate Release**

Defendant Darrell Williams requests compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 27, 36. Mr. Williams asks the Court to reduce his sentence to time served. *Id.* The United States responded on March 8, 2022, dkt. 38, and Mr. Williams filed a reply, dkt. 41. Later, substitute counsel appeared for Mr. Williams and filed a supplemental supporting memorandum on his behalf. Dkt. 46. The United States filed a response, dkt. 50, and Mr. Williams filed a reply, dkt. 51, and a pro se supplemental supporting brief, dkt. 52. Thus, his motions for compassionate release are ripe for decision. For the reasons stated below, Mr. Williams's motions, dkt. [27] and [36], are **granted**.

**I. Background**

*A.   Conviction and Sentencing*

In 2001, the U.S. District Court for the Eastern District of Missouri sentenced Mr. Williams to 310 months in prison for conspiracy to distribute in excess of 500 grams of cocaine. *See* dkt. 36-6 (E.D. Mo. opinion). Just a few months after he was sentenced and entered the Bureau of Prisons ("BOP"), Mr. Williams was found in possession of heroin while housed at USP Terre Haute. *See* dkt. 38 at 1–2. Based on this incident, Mr. Williams was convicted in this Court of

possessing a prohibited object in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(1). *See* JAMS docket entry for Feb. 18, 2003. The Court imposed a sentence of 41 months of imprisonment, to be served consecutive to any previously imposed state or federal sentence. *Id.* It also imposed 3 years of supervised release. *Id.*

While Mr. Williams was being prosecuted in this Court, he was housed in a holding facility in Marion County. *See* dkt. 36 at 4. During his stint in Marion County, he was involved in a fight with other inmates, which ultimately resulted in him being sentenced in state court to 20 years of imprisonment after he was convicted of possessing a dangerous device and aggravated battery. *See* dkt. 36-6 at 2; dkt. 36 at 4, 21; dkt. 36-1 at 9. That sentence was consecutive to his other sentences. *Id.*

At this point, Mr. Williams has been in federal custody for more than 20 years. In 2021, he filed a motion for compassionate release in the Eastern District of Missouri. That motion was granted on November 17, 2021, and his 310-month sentence in that case was reduced to time served. Dkt. 36-6. Since that time, he has begun serving the 41-month sentence in this case. According to the BOP website, Mr. Williams's anticipated release date (from federal custody) is November 25, 2024. The State of Indiana has lodged a detainer, so if the Court grants his motion for compassionate release in this case, he will likely proceed directly to the custody of the Indiana Department of Correction ("IDOC"). *See* dkt. 36-1 at 17. Mr. Williams has stated that, if that occurs, he will seek a reduction of his 20-year state sentence. Dkt. 36 at 21.

B.     *Current Incarceration and Medical Conditions*

Mr. Williams is now 55 years old. He is currently incarcerated at USP Canaan. When Mr. Williams was originally sentenced in the Eastern District of Missouri, he was in relatively good health. Since then, his health has declined precipitously. Since 2014, multiple surgeons have

recommended that Mr. Williams receive spinal surgery, but no such surgery has occurred. *See* dkt. 36-4. And, for several years, Mr. Williams has been wheelchair-bound due to chronic back and neck problems and residual weakness from a stroke he suffered in 2013. *Id.*; *see also* dkt. 46-4, 51-1 at 20. In 2018, a BOP physician evaluated Mr. Williams and found that he needed moderate-maximum assistance transferring to the toilet; was incontinent of bowel and bladder and required adult diapers; was wheelchair dependent but could stand with moderate assistance and take 1–2 steps with maximal assistance; required a wheelchair pusher due to cervical spinal disease affecting his upper extremities; could physically wash his own body but would require assistance in a shower or tub, even with assistive devices; could dress most of himself, but needed help to get completely dressed; and needed moderate assistance with transferring from a bed to a chair. *Id.* The physician rated Mr. Williams as 1 (out of 6) on the Katz Index of Independence of Activities of Daily Living. *Id.* At the time, Mr. Williams's pain was being treated with Tylenol-3 and Naproxen. *Id.* Mr. Williams was designated as a Care Level 3 at that time, dkt. 51-1 at 8, and he represents that he still is designated a Care Level 3, dkt. 52.

Since 2018, Mr. Williams's condition has deteriorated even further. He reports—without contradiction from the United States—that he can no longer stand or take 1–2 steps. Dkt. 46-5. And recent medical records show that Mr. Williams's pain is now being treated with daily doses of opiates (morphine and oxycodone). *See, e.g.*, dkt. 46-2 at 19. When Mr. Williams was transferred to USP Canaan in January 2021, the transferring facility sent him with orders for cleansing wipes, adult diapers, a transfer board, a trapeze, and other adaptive equipment. Dkt. 51-1 at 2, 4. Despite this, Mr. Williams represents—again, without contradiction from the United States—that he has yet to be provided with all the equipment he needs and that he has only been provided with adult diapers on one occasion. Dkt. 46-5 at 2; *see also* dkt. 51-1 at 11 (note from

January 27, 2021, noting that physician at USP Canaan would discuss need for shower chair and sliding board with the HSA), 14 (note from April 23, 2021, noting that Mr. Williams was still waiting for a shower chair and transfer board). Mr. Williams has also asked USP Canaan multiple times to assign him another inmate to push his wheelchair, dkt. 51-1 at 16, 18, but each time the request has been denied because USP Canaan is only a Level 2 care facility and does not assign inmates to push wheelchairs, *id.* at 17, 19. As a result, Mr. Williams represents that he has been forced to pay other inmates to push his wheelchair and help him with other self-care tasks. Dkt. 46-5.

In February 2021, the BOP alerted Mr. Williams that he had been re-designated to another facility, but he has not yet been transferred and remains at USP Canaan. Recent medical records acknowledge that USP Canaan cannot provide the medical services that Mr. Williams needs, *see, e.g.*, dkt. 46-2 at 30 (note from physician assistant dated Jan. 10, 2022, stating, "consult reviewed, is pending transfer for physical therapy and other treatments not currently available at [USP Canaan]"), but Mr. Williams represents that he was recently informed that he will not be transferred, dkt. 52.

When the Eastern District of Missouri granted Mr. Williams's motion for compassionate release, it expressed concern that the BOP had not yet provided an MRI that had been ordered and that Mr. Williams had not yet been scheduled for surgery. Dkt. 36-6. Since that time, Mr. Williams has had an MRI and was examined by an outside specialist. A treatment note dated December 28, 2021, states that the specialist believed that Mr. Williams's chronic cervical and back pain were probably from osteoarthritis, which "would not be surgically treatable." Dkt. 46-2 at 110. He also stated, "In the absence of strong signs of cervical myelopathy or that any of his symptoms are related to spinal canal compromise, he does not require urgent surgical intervention. He is however

at risk for a catastrophic neurologic injury with relatively minor trauma. This would only be prevented by an operative decompression but this can be performed electively." *Id.*

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) a serious deterioration in physical or mental health because of the aging process where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and

6

compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion. As directed by the U.S. Court of Appeals for the Seventh Circuit in *Gunn*, in exercising its discretion to determine whether

7

"extraordinary and compelling reasons" warrant a sentence reduction within the meaning of § 3582(c)(1)(A)(i), the Court acknowledges that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" and consults § 1B1.13 to guide its discretion but recognizes that § 1B1.13 is not conclusive. *See id.* at 1180 ("the Commission's analysis can guide discretion without being conclusive").

### III. Discussion

Mr. Williams contends that "extraordinary and compelling reasons" support release in his case within the meaning of § 3582(c)(1)(A)(i) because his medical conditions substantially reduce his ability to provide self-care while incarcerated at USP Canaan. Dkt. 46.[1] He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.*

In response, the United States does not dispute that Mr. Williams has exhausted his administrative remedies as required by § 3582(c)(1)(A). *See generally* dkt. 38. It also does not dispute that Mr. Williams's medical conditions significantly impact his ability to provide self-care in prison. *Id.*[2] Instead, it argues only that Mr. Williams would be a danger to the community if released and that the § 3553(a) factors do not support release. *Id.*; *see also* dkt. 50 (response to supplemental memorandum relying exclusively on danger to the community and § 3553(a) factors).

---

[1] Previously, Mr. Williams also contended that the risk he faced from COVID-19 presented an extraordinary and compelling reason to release him, *see* dkt. 36, but he no longer relies on that argument, *see* dkt. 46.

[2] In its response, the United States argued that Mr. Williams could not show extraordinary and compelling reasons based on COVID-19 risk, *see* dkt. 38, but Mr. Williams has now withdrawn that argument.

8

A. *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Williams has shown extraordinary and compelling reasons warranting release in this case.[3] As discussed above, Mr. Williams's health has been steadily declining for nearly a decade. He is currently confined to a wheelchair and, as documented by a BOP physician, needs significant assistance with activities of daily living, including toileting and bathing/showering. Indeed, he is not even able to propel his wheelchair by himself. He also experiences severe pain, which is currently being treated with significant and regular doses of narcotics. Taken together, the Court concludes that these facts establish extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A)(i). *See* U.S.S.G. § 1B1.13, Application Note 1(A).[4]

B. *Danger to any Other Person or the Community*

The United States argues that Mr. Williams would be a danger to any other person or the community if released, but the Court disagrees. The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant

---

[3] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Williams's warden in denying Mr. Williams's administrative request for relief. Dkt. 27-1 at 3. In this case, the warden denied Mr. Williams's request because he did "not have a medical condition that leaves [him] disabled or capable or only limited self-care" and because "[m]edical records indicate you are able to care for yourself and need no assistance with your activities of daily living." *Id.* The Court is not bound by that assessment and declines to adopt it because, as discussed above, Mr. Williams's medical records—including an assessment performed by a BOP physician—directly contradict the conclusions that Mr. Williams is not disabled and needs no assistance with activities of daily living.

[4] To the extent that Mr. Williams does not meet the strict requirements of this provision, the Court notes that it is not bound by the policy statement and possesses broad discretion to determine what qualifies as "extraordinary and compelling" under § 3582(c)(1)(A)(i). *See Gunn*, 980 F.3d at 1180–81. Even if Mr. Williams did not meet the strict requirements of Application Note 1(A), the Court would exercise its broad discretion to find that extraordinary and compelling reasons warrant relief in this case.

should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> > **(2)** the weight of the evidence against the person;
> > **(3)** the history and characteristics of the person, including--
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> > **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Williams's crimes were serious. While in prison for another federal drug offense, Mr. Williams possessed heroin. And, while being prosecuted for that heroin possession, he was involved in a fight that led to a 20-year state sentence for possession of a dangerous device and battery. His criminal record prior to that point included multiple serious felonies (including a conviction for escape), which led to him being sentenced as a career offender. *See* dkt. 36 at 2. His disciplinary record shows a long string of disciplinary sanctions during his incarceration, many of which were quite serious. *See* dkt. 38-4. Moreover, as of July 2020, the BOP apparently considered Mr. Williams to be a max custody/high security inmate based on his "communication and negative behavior." Dkt. 36-1 at 4.

The Court finds, however, that Mr. Williams's release from incarceration to his 3-year term of supervised release, and his possible 20 year state sentence, would not threaten the safety of any person or the general public. At this point, Mr. Williams's crimes are two decades behind him. He is now 55 years old, an age at which recidivism becomes less likely. He has completed many BOP programs and classes. Dkt. 36-1 at 15–16. The Court is somewhat concerned by the fact that Mr. Williams was disciplined for sending a threatening email only a year ago, but—aside from that—his most recent serious discipline occurred in 2017—some five years ago. Dkt. 38-4. Since that time, his health has continued to deteriorate, making it physically impossible for him to commit many crimes. Taken together, these facts suggest that Mr. Williams is no longer as dangerous as he might have been even a few years ago.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Williams does not presently pose a danger to any person or the community if his sentence is reduced to time served.

C.   *Section 3553(a) Factors*

The United States also argues that the sentencing factors in § 3553(a) weigh against release, *see generally* dkts. 38, 50, but the Court again disagrees. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--

>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Williams's conduct in this case was serious, and he has a track record of felony convictions and disciplinary problems in prison. Mr. Williams has also completed only a small portion of his 41-month sentence in this case. That said, the crime underlying the sentence that Mr. Williams is currently serving is now two decades old. In addition, Mr. Williams has now served about seven months of his sentence in this case, time that has been much more grueling than the time served by non-disabled inmates. He has maintained a relatively clean conduct record in the last few years and has taken steps to rehabilitate himself, suggesting that further incarceration is not needed to protect the public from future crimes he might commit. He is 55 years old and suffers from a number of serious medical conditions. For reasons not disclosed by the record, the BOP has not provided him with needed medical equipment over the last 18 months and has housed him at a facility that admittedly cannot meet his medical needs. And, while a specialist recently determined that Mr. Williams did not need "urgent" surgery, the same specialist also determined that he runs a constant risk of "catastrophic neurological injury." Despite this, the BOP is not taking any steps to provide him with the surgery he needs to avoid that risk. In short, over the course of at least the last two years, the BOP has shown that it cannot or will not provide Mr. Williams with the medical care he needs.

Taking all the facts together, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Williams's sentence to time served. *See United States v. Ebbers*, No. S402-CR-

11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Williams incarcerated any longer would be more than what is necessary to provide just punishment for his heroin possession conviction.

### IV. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Williams's sentence to time served, that Mr. Williams does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from his term of imprisonment in this case is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Williams's motions for compassionate release, dkts. [27] and [36], and **ORDERS** that Mr. Williams's sentence of imprisonment be reduced to **time served.** The term of supervised release remains 3 years. The terms of supervised release stated in the Judgement imposed on February 18, 2003, remain the same with the addition of the following condition: Mr. Williams is ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

This Order is stayed for up to **14 days**, to make appropriate travel arrangements and to ensure Mr. Williams's safe release. The BOP shall release Mr. Williams as soon as appropriate travel arrangements are made and it is safe for Mr. Williams to travel. There shall be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel

arrangements and to ensure Mr. Williams's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

No later than **12:00 p.m. on June 22, 2022**, counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Williams's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

**IT IS SO ORDERED.**

Date: 6/21/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel